UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JASON RICHARD EIDAM,

        Plaintiff,                Case No. 1:10-cv-1165

v.                                       Honorable Janet T. Neff

BLAINE LAFLER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lafler and Christianson. The Court will serve the complaint against Defendants Ackley, Snyder and Bollinger.

**Discussion**

I.   Factual allegations

Plaintiff Jason Richard Eidam presently is incarcerated at the Berrien County Jail, though the actions he complains of occurred while he was housed at the Carson City Correctional Facility (DRF). Plaintiff sues the following DRF employees: Warden Blaine Lafler; Sergeants (unknown) Snyder and (unknown) Bollinger; Assistant Resident Unit Supervisor (unknown) Ackley; and Inpector (unknown) Christianson.

On May 21, 2010, Plaintiff was sent to DRF. He was placed in a cell with one roommate, Prisoner Almond. Plaintiff went to sleep in the bottom bunk of the cell. He awoke to find Prisoner Almond standing three feet away from him, naked and masturbating. Plaintiff got angry and told Almond that he did not want to see the behavior again. He went back to sleep, but Almond shook Plaintiff awake at 4:00 or 5:00 a.m. Almond was again naked, and he asked, "Could I suck your white dick or would you fuck me?" Plaintiff refused vehemently and told Almond, "I'm not a fag, and tomorrow one of us is gonna move!" (Compl. at 12, Page ID #3.) Plaintiff eventually went back to sleep. When he awoke on the morning of May 22, 2010, Almond was standing by the door with his hand in his shorts, masturbating.

Plaintiff went to the dayroom and discussed the problem with another inmate. Plaintiff was called to the Control Center to be heard on his grievance at approximately 1:50 p.m. Plaintiff told Sergeant Demenov what was happening. Demenov called Defendant Ackley and told Ackley to move Plaintiff that day. When Plaintiff met with Ackley, Ackley told Plaintiff that he did not know of anyone Plaintiff could move in with. Plaintiff then asked to be moved to protective segregation. Ackley asked Plaintiff if he feared for his life. Plaintiff replied that he feared that

Almond would sexually assault him. Ackley told Plaintiff that he could not go to segregation. When Plaintiff demanded protection, Ackley laughed and told Plaintiff that he needed to find a willing roommate.

Plaintiff called his mother, who called Defendant Snyder about the situation. Snyder called Plaintiff to the Control Center at 6:00 p.m., asking more questions. Snyder told Plaintiff that no one could move him until Monday, and indicated that he would inform Defendant Ackley and Resident Unit Manager Mote. Plaintiff asked Snyder to move him to protective segregation, but Snyder denied the request.

Plaintiff went to sleep in his cell at about 11:00 p.m. At 2:00-3:00 a.m. on May 23, 2010, Plaintiff awoke to find Almond masturbating with his hand in Plaintiff's shorts. As Plaintiff tried to roll out of his bunk, Almond ejaculated on Plaintiff's arm. Plaintiff pushed Almond away and went to the officers' desk, showing them his arm. He was taken to Carson City Hospital. At the hospital, the emergency room doctor and Defendant Bollinger instructed Plaintiff to wash his arm. Becoming loud and confrontational, Plaintiff insisted that he wanted the state police called and the evidence collected. Bollinger gave Plaintiff a direct order to wash his arm and told Plaintiff that if he did not do so, he would be taken to segregation when he returned to the prison. Ultimately, Plaintiff was taken to Sparrow Hospital for evidence collection by a sexual assault nurse examiner.

After Plaintiff returned from the hospital, Plaintiff allegedly was subjected to a series of retaliatory actions. Bollinger allegedly placed him in segregation for two days, ostensibly as punishment for complaining and exercising his right to report the crime. Subsequently, Plaintiff's mail was defaced and sent back to his family. On June 24, 2010, Plaintiff's job was taken by an unnamed inspector. On September 15, 2010, Defendant Inspector Christianson told Plaintiff that

he would not be getting his job back. Plaintiff now earns $.96 per day, as opposed to his previous wage of $1.77.

While Plaintiff was at the hospital, he was told by the accompanying corrections officers that Prisoner Almond was serving sentences for three counts of second-degree criminal sexual conduct. He also was told that Almond had recently been moved from a Level 1 to a Level 2 confinement because of his sexual misconducts. Plaintiff therefore contends that Defendant Ackley and other officers were aware that Almond posed a risk to other prisoners, but they failed to protect him, in violation of the Eighth Amendment. He also alleges that he was subjected to retaliation for attempting to file a criminal complaint.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Lafler

Plaintiff fails even to mention Defendant Lafler in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not "allege with any degree of

specificity which of the named defendants were personally involved in or responsible for each of the alleged violation of . . . rights"); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff's claims against Defendant Lafler fall far short of the minimal pleading standards under FED. R. CIV. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff suggests that Defendant Lafler is liable for the conduct of his subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Lafler engaged in any active unconstitutional behavior.

### B. Retaliation

Plaintiff alleges a series of retaliatory actions. He contends that Bollinger placed him in segregation for two days, allegedly as punishment for reporting the crime. In addition, he contends that his mail was defaced and sent back to his family. On June 24, 2010, Plaintiff's job was taken by an unnamed inspector. On September 15, 2010, Defendant Christianson told Plaintiff that he would not be getting the job back.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. "Moreover, [a] plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Assuming that Plaintiff has sufficiently alleged that he was engaged in protected conduct, he fails to allege that any of the named Defendants engaged in the allegedly adverse conduct of defacing and returning his mail or removing him from his job, or that those actions were causally connected to Plaintiff's complaints. Plaintiff's only allegation regarding the job loss is that Defendant Christianson, who was assigned to investigate Plaintiff's job loss, told Plaintiff that he would not be getting his job back. Plaintiff does not allege that Christianson was actively involved in Plaintiff's job loss. As previously discussed, a defendant may not be held liable for failing adequately to investigate or resolve a grievance. *Shehee*, 199 F.3d at 300. Moreover, a defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee*, 199 F.3d at 301.

Further, Plaintiff fails to allege facts that would support a causal connection between the protected conduct and his job loss, regardless of who made the decision to remove him from his job. Plaintiff only alleges that his job was taken away a month after the incident with Almond. "Conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff therefore fails to state a retaliation claim against any Defendant other than Bollinger. Since Plaintiff's only allegations against Christianson relate to the retaliation claim, the action against Christianson will be dismissed for failure to state a claim.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that the complaint against Defendants Lafler and Christianson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Ackley and Snyder. Plaintiff's allegations also are sufficient to state a retaliation claim against Bollinger. The remainder of Plaintiff's retaliation claims are dismissed for failure to state a claim. The Court will serve the complaint against Defendants Ackley, Snyder and Bollinger.

An Order consistent with this Opinion will be entered.


Dated: February 18, 2011              /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge