UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JASON EIDAM,

        Plaintiff,                              Hon. Janet T. Neff

v.                                               Case No. 1:10 CV 1165

BLAINE LAFLER, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #20), and Plaintiff's Motion for Rule 56(f) Continuance, (dkt. #25). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motion for summary judgment, (dkt. #20), be **granted in part and denied in part**, and Plaintiff's motion for continuance be **denied**.


**BACKGROUND**

Plaintiff is presently incarcerated at the Parnall Correctional Facility (SMT). The events giving rise to this action occurred while Plaintiff was incarcerated at the Carson City Correctional Facility (DRF). Plaintiff initiated this action on November 24, 2010, against the following DRF employees: Warden Blaine Lafler, ARUS Ackley, Sergeant Snyder, Sergeant Bollinger, and Inspector Christianson. The following allegations are contained in Plaintiff's verified complaint. (Dkt. #1).

On an unspecified date, Plaintiff awoke at approximately 3:00 a.m. and witnessed his cellmate, inmate Almond, standing approximately three feet away "butt naked masturbating." Plaintiff

told Almond "he better never do that with me in the room again." Plaintiff returned to sleep, but was awakened a short time later when Almond put his hand on Plaintiff's chest. Almond was masturbating and asked Plaintiff, "could I suck your white dick or would you fuck me?" Plaintiff "pushed [Almond] away," yelling "I'm not a fag, and tomorrow one of us is gonna move." Plaintiff again returned to sleep. When Plaintiff awoke, Almond was "standing in the door with his shorts leg pulled up, masturbating while looking into the cell across the hall."

Plaintiff immediately "went to the dayroom and discussed the situation with Mike Pray." On Saturday, May 22, 2010, Plaintiff informed Sergeant Demenov "what was going on in detail." Demenov then spoke with ARUS Ackley "and told [Ackley] what was going on and told him to move [Plaintiff] today." Plaintiff then spoke personally with Ackley and "told [him] in detail the situation." Ackley responded that if Plaintiff wanted to be housed in a different cell he "had to find someone to move in with." When Plaintiff informed Ackley that he "did not know anyone who [he] could move in with," Ackley simply told Plaintiff "he had no were (sic) to move [him]." Plaintiff then told Ackley that he "wanted to go to segregation for protection" because he feared Almond "would assault [him] in a sexual way." Ackley told Plaintiff that "most inmates would like that." When Plaintiff told Ackley that "it was his job to protect [him]," Ackley "laughed at [Plaintiff] and said find someone to move in with and Monday we might move you."

Plaintiff later telephoned his mother, Denise Eidam, "and explained the whole situation to her." Plaintiff's mother then telephoned Sergeant Snyder and "explained the situation" to him. Snyder then summoned Plaintiff who told Snyder "what was going on in detail." Snyder told Plaintiff that he could not be moved to another cell until Monday and that he would "e-mail RUM Mote and

ARUS Ackley." When Plaintiff asked to immediately be placed in administrative segregation, Snyder responded, "no," and told Plaintiff he "would be okay till Monday."

At approximately 3:00 a.m. the following morning, Plaintiff was awakened when Almond, who was masturbating, placed his hand in Plaintiff's shorts and began grabbing Plaintiff's penis. As Plaintiff attempted to "roll out of [his] bunk," Almond "ejaculated on [Plaintiff's] arm and stomach." Plaintiff yelled and pushed Almond away. Plaintiff immediately reported the incident to a corrections officer after which he was taken to a hospital. While Plaintiff was at the hospital, the corrections officers that were guarding him informed Plaintiff that Almond was incarcerated for having committed three counts of second degree criminal sexual conduct and, moreover, that Almond's security level had "recently" been increased for having committed "sexual misconducts" toward staff. The corrections officers further informed Plaintiff that Almond's "conduct was well known to staff." Following this incident, Plaintiff was subjected to various forms of retaliation.

Plaintiff alleges in this action that Defendants' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also alleges that he was subjected to improper retaliation in violation of his First Amendment rights. Plaintiff has sued Defendants in their individual and official capacities seeking monetary relief. Plaintiff's claims against Defendants Lafler and Christianson were dismissed by the Honorable Janet T. Neff on screening. Plaintiff's retaliation claims against Defendants Lafler, Ackley, Snyder, and Christianson were also dismissed on screening. Plaintiff later voluntarily dismissed his claims against Defendant Bollinger. Thus, the only claims remaining in this matter are Plaintiff's Eighth Amendment claims against Defendants Ackley and Snyder who now move for summary judgment. Plaintiff has responded to Defendants' motion for

summary judgment, but also moves for a continuance to conduct discovery necessary to more completely respond to Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.       Eleventh Amendment

As previously noted, Plaintiff is suing Defendants in both their official and personal capacities seeking monetary relief. Defendants asserts that to the extent Plaintiff is seeking to recover monetary relief against them in their official capacity such is precluded by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action

asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As previously noted, Plaintiff is seeking only monetary relief in this action. The Court finds that Defendants are entitled to immunity as to Plaintiff's claims for monetary damages against them in their official capacity. Accordingly, the undersigned recommends that Plaintiff's claims asserted against Defendants Ackley and Snyder in their official capacity be dismissed.

## II.        Plaintiff's Motion for Continuance

While Plaintiff has responded to Defendants' motion for summary judgment, he also requests a continuance so that he can conduct certain additional discovery necessary to properly respond to Defendants' motion for summary judgment. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering the motion, allow time for discovery, or "issue any other appropriate order."

Plaintiff has submitted an affidavit in which he details the additional discovery that he asserts is necessary to adequately oppose Defendants' motion for summary judgment. The additional discovery which Plaintiff seeks to obtain is relevant to Plaintiff's Eighth Amendment claims against Defendants Ackley and Snyder. Plaintiff has also satisfactorily articulated why he has been unable, thus

far, to obtain the discovery in question. The undersigned finds, therefore, that Plaintiff is entitled to a continuance under Rule 56(d). As discussed below, however, such relief is unnecessary because the evidence presently before the Court is insufficient to grant the relief Defendants seek.

Accordingly, the undersigned recommends that Plaintiff's motion for continuance be denied. This is not to suggest that Plaintiff is not entitled to obtain the discovery detailed in his motion, as the Court offers no opinion on the matter. This particular recommendation instead merely reflects the Court's conclusion that the discovery in question is not necessary to resolve Defendants' present motion for summary judgment. In the event, however, that the recommendation (detailed below) to grant in part and deny in part Defendants' motion for summary judgment is rejected, the undersigned recommends that Plaintiff's motion for continuance be granted and resolution of Defendants' motion for summary judgment be stayed to permit Plaintiff to obtain the discovery detailed in his motion.

## III.       Eighth Amendment

Plaintiff asserts that Defendants Ackley and Snyder violated his Eighth Amendment rights by failing to protect him from the risk of sexual assault.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official acted with

a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the official deliberately indifferent to the prisoner's health or safety. *Id.*

To prevail on his claim that Defendants failed to protect him, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk of serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828). To establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Plaintiff can make this showing through "inference from circumstantial evidence." *Greene*, 361 F.3d at 294. A prison official "cannot escape liability. . .by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who committed the assault." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 842-43). Likewise, "where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability even where the particular prisoner at risk is not known in advance." *Greene*, 361 F.3d at 294 (citing *Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2001).

Defendants argue that they are entitled to relief because Plaintiff can satisfy neither the objective nor subjective element of the analysis. In his verified complaint, Plaintiff asserts that he personally informed Defendants Ackley and Snyder of Almond's repeated acts of masturbation and request for sex. (Dkt. #1). Plaintiff further asserts in his verified complaint that prison staff were aware that Almond had been convicted of criminal sexual conduct and had recently engaged in sexual misconduct towards prison staff. Plaintiff has submitted an affidavit executed by his mother in which

she asserts that she spoke with Defendant Snyder on May 22, 2010, and "informed him of the sexual harassment [Plaintiff] was experiencing." Plaintiff has submitted an affidavit executed by Michael Pray who asserts that he witnessed Plaintiff inform Defendant Ackley that he was concerned that "his Bunkie Almond might try to sexually assault him." *Id.* Defendants Ackley and Snyder have each submitted affidavits in which they assert that Plaintiff stated that he was not afraid of Almond. (Dkt. #21, Exhibits I-J). This evidence reveals that there exists a genuine factual dispute as to whether Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm."

With respect to the objective element of the analysis, the result is the same. Plaintiff asserts in his verified complaint that he specifically asked both Ackley and Snyder to move him to another cell or even place him in administrative segregation because he feared Almond would sexually assault him. (Dkt. #1). Plaintiff asserts that Defendant Ackley and Defendant Snyder both refused his request. Defendant has submitted an affidavit from Jeffrey Cannon who asserts that on May 22, 2010, he witnessed Defendant Ackley refuse Plaintiff's request "to be moved to a different cell or be placed in administrative segregation for protective custody." *Id.* Defendants Ackley and Snyder each acknowledge that Plaintiff requested to move to another cell, but deny that Plaintiff requested "protection" from Almond. (Dkt. #21, Exhibits I-J). Again, the evidence thus far submitted reveals that there exists a genuine factual dispute as to whether Defendants were subjectively aware of the risk Plaintiff faced and failed to respond reasonably thereto.

The undersigned recommends, therefore, that Defendants' motion for summary judgment as to Plaintiff's claims asserted against them in their personal capacity be denied.

**IV.	Qualified Immunity**

Plaintiff asserts that Defendants Ackley and Snyder violated his Eighth Amendment rights by failing to protect him from the risk of sexual assault. Defendants assert that they are entitled to qualified immunity because they "did not violate a clearly established constitutional right."

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 129 S.Ct. at 816. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The

inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845

(quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,* 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

As recognized above, it was recognized long before the conduct giving rise to this action that where an inmate faces a substantial risk of serious harm, deliberate indifference in response thereto violates the Eighth Amendment. As discussed above, at this juncture there exist genuine factual disputes

regarding whether Defendants violated Plaintiff's constitutional rights. Accordingly, the undersigned recommends that Defendants are not entitled to qualified immunity.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #20), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims asserted against Defendants Ackley and Snyder in their official capacity be dismissed, but that Plaintiff's claims asserted against Defendants Ackley and Snyder in their personal capacity go forward. The undersigned also recommends that <u>Plaintiff's Motion for Rule 56(f) Continuance</u>, (dkt. #25), be **denied**, unless the aforementioned recommendations regarding Defendants' motion for summary judgment are rejected in which case the undersigned recommends that Plaintiff's motion for continuance be granted and resolution of Defendants' motion for summary judgment be stayed to permit Plaintiff to obtain the discovery detailed in his motion.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                Respectfully submitted,

Date: January 3, 2012           /s/ Ellen S. Carmody
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge